**GREAT AMERICAN INSURANCE COMPANY, Plaintiff,**

v.

**Henry Marvin McDOWELL, Elizabeth H. McDowell, Ernest Hardee, Margaret G. Rabon and Coastal Motor Company, Inc., Defendants.**

**Civ. A. No. 66-631.**

United States District Court
D. South Carolina,
Florence Division.

Dec. 7, 1967.

---

C. Weston Houck, Willcox, Hardee, Houck, Palmer & O'Farrell, Florence, S. C., for plaintiff.

S. Norwood Gasque, Latta, S. C., for defendant.

## ORDER

SIMONS, District Judge.

This is a declaratory judgment action instituted by plaintiff on August 30, 1966 seeking a determination that plaintiff's garage liability insurance policy #4-67-83-54 issued to defendant Coastal Motor Company, Inc., did not afford coverage to defendant Henry Marvin McDowell, at the time he was involved in an automobile accident near Loris, South Carolina on February 1, 1966 since he was operating an automobile of defendant Coastal Motor Company in such a manner and under such circumstances that he was not an insured under plaintiff's policy.

The answer of defendant Coastal Motor Company, Inc., interposed a general denial. Defendants Elizabeth H. McDowell and Margaret G. Rabon in their

answer contend that plaintiff's policy in question provided coverage for defendant Henry Marvin McDowell at the time of the accident.

Neither defendant Ernest Hardee nor defendant Henry Marvin McDowell filed any responsive pleadings.

The case was tried without a jury on November 6, 1967. In accordance with Rule 52(a) of the Federal Rules of Civil Procedure, the court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. As a result of the accident near Loris, South Carolina, at about 7:00 p. m. on February 1, 1966, a suit has been filed against defendant Henry Marvin McDowell by Elizabeth H. McDowell in the Court of Common Pleas of Horry County. It is also expected that suits will be filed against McDowell by defendants Ernest Hardee and Margaret G. Rabon. Defendant McDowell contends that he was insured at the time of the accident by the policy issued by plaintiff to McDowell's employer, Coastal Motor Company, Inc., and requests that plaintiff defend him, which plaintiff is required to do if he was an "insured" within the meaning of the policy. Thus an actual and substantial controversy exists between the parties hereto.

2. Coastal Motor Company, Inc., is an automobile dealership located at Myrtle Beach, South Carolina. In connection with this business it operates a body repair shop at the same location.

3. All the individual defendants were at the time of the accident and at the time of the commencement of this action residents of Horry County, South Carolina.

4. Plaintiff is a corporation organized and existing under the laws of the State of New York, with its principal place of business in the City of New York. On or about January 2, 1966 it issued its garage liability policy no. 4–67–83–54 to defendant Coastal Motor Company, Inc., which was in full force and effect at the time of McDowell's accident on February 1, 1966.

5. Defendant Henry M. McDowell had worked off and on for Coastal Motor Company, Inc., over a period of ten to twelve years; and aside from the last period of employment commencing on Friday, January 21, 1966, he had last worked for Coastal in 1964.

6. On Friday, January 21, 1966 McDowell was hired by Eddie E. Williams, owner and operator of Coastal Motor Co., Inc., and began work on the following Monday, January 24, 1966. During the employment conference McDowell told Williams he was living with his sister in Myrtle Beach, and Williams told him he could use a company automobile during the week only to go back and forth from home to work. Williams denied him permission to use a car on weekends because he knew from prior experience that McDowell was bad about drinking, and he had previously fired him because he was on a "bender" and had used a customer's car without permission. Nevertheless, he rehired him because he was a good body man and he had promised to do better.

7. N. C. Huggins, second in command at Coastal Motors, testified that he was present when Williams hired McDowell, and heard the agreement that McDowell could use a company car to go to and from his residence at his sister's home in Myrtle Beach during the week only.

8. McDowell worked the entire week of January 24, 1966 through Saturday noon January 29, 1966. Although McDowell testified that he worked on the following Monday and Tuesday, January 31 and February 1, 1966, the weight of the testimony is to the contrary. Coastal's body repair shop employed two men, McDowell and J. D. Sarvis. Mr. Sarvis testified that McDowell did not work any day during the week of the wreck. The Company's pay records along with the testimony of other responsible witnesses substantiate this fact. Thus the court finds that he did not work either on Monday, or on Tuesday, February 1, 1966, the latter being the day of the accident in question.

9. Defendant McDowell drove the Company Oldsmobile involved in the accident home with him on Saturday, January 29, 1966, which was against the instructions and contrary to the permission given to him by Williams at the time of his employment. He kept the car in his possession from then until the accident, using it for his own personal convenience and benefit. E. J. Hardee, Chief of Police of Loris who investigated the accident, testified that he had seen McDowell driving the car around Loris during the day on Monday and Tuesday just before the accident.

10. At approximately 7:00 p. m. on February 1, 1966, McDowell, while operating Coastal's automobile with defendants Elizabeth H. McDowell and Margaret Rabon as passengers therein collided with one or more parked vehicles in or near the Town of Loris. His use of the automobile at this time was beyond the limited permission granted by his employer and was not within the scope of his employment.

11. The policy of garage-liability insurance no. 4-67-83-54, issued by plaintiff to the defendant, Coastal Motor Company, Inc., contained the following pertinent provisions regarding insureds under the policy:

"Persons Insured. Each of the following is an insured under Part 1, except as provided below:

(1) The named insured,

(2) With respect to garage operations other than the Automobile Hazard:

(a) any employee, director or stockholder of the named insured while acting within the scope of his duties as such,

(b) if the named insured is a partnership, any partner therein but only with respect to his liability as such,

(c) any person or organization having a financial interest in the garage operations of the named insured;

(3) With respect to the Automobile Hazard:

(a) any person while using, with the permission of the named insured, an automobile to which the insurance applies under paragraph 1(a) or 2 of the Automobile Hazards, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission,

(b) any person while using an automobile to which the insurance applies under paragraph 1(b) of the Automobile Hazards with the permission of the person or organization to whom such automobile is furnished, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission,

(c) any other person or organization but only with respect to his or its liability because of acts or omissions of the named insured or of an insured under paragraph (a) or (b) above."

12. On February 1, 1966 at about 5:00 p. m. and prior to the accident involved herein, defendant McDowell had driven by J. C. Bellamy's home in Myrtle Beach, and while there Coastal's automobile driven by Elizabeth McDowell ran into Mr. Bellamy's vehicle. McDowell told Bellamy to bring the car to Coastal Motors and he would repair it. Bellamy did so on the following morning, Wednesday, February 2, 1966, and this was the first notice that any of the officials of Coastal Motor Company received that McDowell had one of the Company automobiles in his possession without permission. At this time N. C. Huggins went to the Myrtle Beach Police Department and made a complaint against McDowell for driving Coastal's automobile without consent. He signed a warrant for McDowell's arrest. At this time Huggins had not learned of McDowell's wreck in Loris during the evening of February 1st.

13. At the time of the accident in question, McDowell was not returning from or going to work. He was using the automobile solely for his personal use and pleasure, and had deviated from any permission granted expressly or impliedly to use a Company car.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the parties, and of the subject matter of the action. There exists an actual controversy between the parties and this declaratory judgment proceeding is proper under 28 U.S.C.A. § 2201.

2. The burden of proof is upon Henry McDowell to establish that his use of the vehicle at the time of the accident in question was within the express or implied permission of the named insured. Crenshaw v. Harleysville Mutual Casualty Co., 246 S.C. 549, 144 S.E.2d 810 (1965). What amounts to implied permission is a matter of differences of opinion in the various jurisdictions.

3. Although some jurisdictions have adopted the so-called liberal rule in determining the permissive use of automobiles with regard to liability insurance policies, South Carolina has not done so. The liberal rule provides that express permission for the use of an automobile for a given purpose implies permission for all purposes. However, in South Carolina permission to use a "covered" vehicle for a particular purpose does not imply permission to use it for all purposes.

4. Implied consent must be determined from the facts and circumstances of the individual case. As stated in Crenshaw v. Harleyville Mutual Casualty Co., supra, at 812 and 813:

"Implied consent, as the term suggests, rests upon proof of circumstances from which an inference of actual permission or consent reasonably arises. The implication is one of fact based upon circumstantial evidence. Generally, in the case of employer and employee, there must be some conduct on the part of the employer sufficient to raise in the mind of the employee a reasonable belief that consent was intended. * * * Consent to the use by an employee of his employer's automobile, outside the scope of his employment, will be implied only if there has been 'a course of conduct or a practice with the knowledge and acquiescence of the owner, such as would indicate to a reasonable mind that the employee had the right to assume permission under the particular circumstances.' * * * Implied consent 'involves an inference arising from a course of conduct or relationship between the parties, in which there is mutual acquiescence or lack of objection under circumstances signifying assent.' * * * "

See also Continental Casualty Company v. Padgett, as Adm'x, etc., 219 F.2d 133 (4th Cir. 1955).

5. The *Crenshaw* case and the present one are somewhat similar. In *Crenshaw,* Moore the driver of the truck in which plaintiff's intestate was riding was a new employee who had been given permission to drive the truck to and from work, and he was instructed to take precautions against theft of the employer's equipment and supplies on the truck since it could not be locked. Moore first drove the truck home after work on Thursday, and he drove it to and from work on Friday and Saturday. The fatal accident occurred after midnight on that Saturday some twenty miles from Greenville. There was testimony by witness Sams that the truck had been seen being driven after hours towards Greer, but that the driver was not identified although the truck was supposedly in the possession of the employee. This fact was reported to the employer on the next morning, so he definitely had knowledge of the use. But he had no opportunity to discuss the matter with the employee prior to the accident. The employer had told his employee he could only drive to and from work and no where else. The court said:

"The evidence here falls far short of establishing a course of conduct between the parties suggesting consent. * * * The only information which

had come to Bishop suggesting a use of the truck after hours was the report made to him by Sams. His failure to admonish Moore or to demand an explanation had no tendency to suggest to Moore that his employer intended to permit him to use the truck for his own purposes, because Moore did not know that the use of it on Thursday night had been reported to Bishop or become known to him in any way."

6. In the present case McDowell had only been employed one week and had limited permission to use an automobile only for going to and from work during the week. The officials of Coastal had no knowledge of his unauthorized use until after the accident in question. Upon discovering such use N. C. Huggins, a Coastal official, immediately swore out a warrant for him. Had McDowell used the car over a considerable period of time involving a general use of the vehicle outside of business hours, and this fact had been known, or reasonably should have been known, by the employer, then the situation would be different. Montgomery, as Admx. v. Employers Mutual Liability Insurance Co., 247 S.C. 46, 145 S.E.2d 437 (1965). But here McDowell had only worked for one week, and no unauthorized use of same had come to the knowledge of, or had been acquiesced in, by the Company management.

7. McDowell had no express consent to use a Company car for any purpose other than to go back and forth to work driving to work only from his sister's home in Myrtle Beach where he told his employer he was living when he was employed. He has failed to sustain the burden of proving that his use of the automobile on the occasion in question was with the implied consent of the named insured as is required by South Carolina law.

8. Since McDowell was acting outside the limits of any express or implied permission given him by his employer to use the automobile at the time of the accident in question, he had no permission to operate Coastal's automobile at the time

of the accident on February 1, 1966, and was not an "insured" under the provisions of plaintiff's policy of insurance.

In accordance with the foregoing findings and conclusions, it is

Ordered that judgment be, and the same hereby is, entered in favor of the plaintiff to the effect that the defendant Henry Marvin McDowell was not an insured under the concerned policy at the time of the accident of February 1, 1966, and plaintiff is not therefore required to afford him any benefits under said policy.